David W. Tufts (8736)
Ian M. Kinghorn (17717)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main, Suite 2400
Salt Lake City, Utah 84111
(801) 415-3000
david.tufts@dentons.com
ian.kinghorn@dentons.com

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
**DENTONS US LLP**
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
(312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com
jacqui.giannini@dentons.com

*Attorneys for Defendants Katherine Kubler and Netflix, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NARVIN LICHFIELD, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>KATHERINE KUBLER, an individual, NETFLIX, INC., a Delaware Corporation, and JOHN DOES A-L,<br><br>    Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PURSUANT TO ANTI-SLAPP ACTS**<br><br>Case No. 2:24-cv-00458-JNP-CMR<br><br>Judge Jill N. Parrish |

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 2

I.    PLAINTIFF'S OPPOSITION CONFIRMS THAT NOTHING IN THE SERIES STATES A VIABLE CAUSE OF ACTION FOR DEFAMATION. ................................. 3

    A.    Plaintiff Admits What the Series Said About His Involvement With WWASP Is True, and a Claim Cannot Be Based On Statements the Series Did Not Make. .................................................................................... 3

    B.    Plaintiff Has No Answer to The Law Barring Claims Based On Ms. Kubler's Hyperbolic "Getting Away With" Expressions of Opinion. ................... 4

    C.    Plaintiff Has No Answer to the Law Requiring Dismissal of Any Claim Based On the Series' True and Privileged Report of Plaintiff's Costa Rica Arrest. .................................................................................................... 8

    D.    Plaintiff Concedes That He Cannot Base a Defamation Complaint On Generalized Comments About WWASP or the Troubled Teen Industry. ........... 10

    E.    Plaintiff Cannot Skirt His Complaint's Fatal and Unconstitutional Flaws By Arguing Defamation By "Omission" or "General Impression". ........................ 11

II.    PLAINTIFF DOES NOT PLAUSIBLY PLEAD ACTUAL MALICE. ........................... 13

III.    THE DUPLICATIVE TORT CLAIMS MUST BE DISMISSED TOO. .......................... 14

IV.    DEFENDANTS ARE ENTITLED TO RELIEF UNDER THE ANTI-SLAPP ACTS. .................................................................................................................... 15

CONCLUSION ......................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blatty v. N.Y. Times Co.*,
   42 Cal.3d 1033 (1986) ...................................................................................11

*Brokers' Choice of Am. v. NBC Universal*,
   861 F.3d 1081 (10th Cir. 2017) .................................................... *passim*

*CACI Premier Technology, Inc. v. Rhodes*,
   536 F.3d 280 (4th Cir. 2008) .........................................................................8

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)...........................................................................5

*Coleman v. Grand*,
   523 F. Supp. 3d 244 (E.D.N.Y. 2021) ........................................................13

*Davidson v. Baird*,
   2019 UT App 8 ...............................................................................................7

*Deripaska v. Assoc. Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017) ...............................................................7

*Diamond Ranch Academy, Inc. v. Filer*,
   2016 WL 633351 (D. Utah Feb. 17, 2016) ..................................................15

*Dorsey v. Nat'l Enquirer*,
   973 F.2d 1431 (9th Cir. 1992) ........................................................................9

*Eliott v. Lions Gate Ent'mnt Corp.*,
   639 F. Supp. 3d 1012 (S.D. Cal. 2022).......................................................12

*Fairstein v. Netflix, Inc.*,
   553 F. Supp. 3d 48 (S.D.N.Y. 2021).............................................................12

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (1999) .........................................................................7

*Greenbelt Coop. Publ'ng Assn., Inc. v. Bresler*,
   398 U. S. 6 (1970)......................................................................................6, 13

*Hogan v. Winder*,
   762 F. 3d 1096 (10th Cir. 2014) ...........................................................2, 8, 12

*Immanuel v. Cable News Network, Inc.*,
618 F. Supp. 3d 557 (S.D. Tex. 2022) ...................................................................14

*Janklow v. Newsweek*,
788 F.2d 1300 (8th Cir. 1986) ..............................................................................11

*Lopez v. Brennan*,
2018 WL 4688352 (D. Utah Sept. 28, 2018) ......................................................5, 9

*Love v. Simmons*,
2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ..........................................................14

*Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*,
810 F.3d 1161 (10th Cir. 2016) ...............................................................................2

*Martineau v. Currutt*,
2022 WL 180735 (D. Utah Jan. 19, 2022) (Parrish, J.) ...........................................3

*Masson v. New Yorker Mag.*,
501 U.S. 496 (1991) ................................................................................................4

*Mauldin v. Worldcom, Inc.*,
263 F.3d 1205 (10th Cir. 2001) ...............................................................................9

*Miami Herald Publ'ng v. Tornillo*,
418 U.S. 241 (1974) ..............................................................................................12

*Milkovich v. Lorain Jour.*,
497 U.S. 1 (1990) ..........................................................................................5, 6, 8

*Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974) ................................................................................................6

*NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.*,
879 P.2d 6 (Colo. 1994) ........................................................................................11

*Netflix, Inc. v. Barina*,
2022 WL 3908540 (Tex. App. Aug. 31, 2022) ......................................................12

*Nexus Pharm., Inc. v. Central Admixture Pharm. Servs.*,
48 F.4th 1040 (9th Cir. 2022) ..................................................................................4

*Nunes v. Rushton*,
299 F. Supp. 3d 1216 (D. Utah 2018) ..................................................................2, 7

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) ...................................................................................5

*Peterson v. Grisham*,
   2008 WL 4363653 (E.D. Okla. Sept. 17, 2008), *aff'd*, 594 F.3d 723 (10th Cir.
   2010) ........................................................................................................................5, 7

*Phila. Newsp., Inc. v. Hepps*,
   475 U.S. 767 (1986) ..............................................................................................4

*Pratt v. Nelson*,
   164 P.3d 366 (Utah 2007) ....................................................................................10

*Resolute Forest Prods. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..............................................................15

*Rinsley v. Brandt*,
   700 F.2d 1304 (10th Cir. 1983) .................................................................5, 8, 12

*Time, Inc. v. Firestone*,
   424 U.S. 448 (1976) ..............................................................................................9

*TMJ Implants, Inc. v. Aetna, Inc.*,
   498 F.3d 1175 (10th Cir. 2007) ...........................................................................11

*UHS of Provo Canyon, Inc. v. Bliss*,
   2024 WL 4279243 (D. Utah Sept. 24, 2024) ......................................................15

*Westmont Residential LLC v. Buttars*,
   2014 UT App 291 ..................................................................................................3

**Statutes**

California Civil Code
   § 47(d) ....................................................................................................................9

California Code of Civil Procedure
   § 425.16 ................................................................................................................15

Utah Code Ann.
   § 78B-25-107(1) ..................................................................................................15
   § 78B-25-110 .......................................................................................................15

**Rules and Regulations**

Federal Rules of Civil Procedure Rule 12(b)(6) ..........................................................15

Plaintiff's Opposition offers nothing new and ignores the wealth of First Amendment case law cited in Defendants' Motion. His Opposition makes clear that based on the actual content and context of the three-part Netflix documentary series, *The Program: Cons, Cults and Kidnapping* (the "Series"), Plaintiff's claims fail as a matter of law.

While Plaintiff's Complaint goes on at length about countless parts of the Series that do not mention or involve him, his Opposition now confirms that he has identified only a few purported statements in the Series on which he bases his claims: (1) Plaintiff's allegation that the Series purportedly claims he "exercised direct control in" Ivy Ridge or was the "mastermind or direct controller of" the WWASP youth programs (the "Control" statements); (2) Ms. Kubler's remarks that Plaintiff had "gotten away with this for so long" and that "people in the 'higher ups' '[seem to] get away with murder'" while a photo of Plaintiff and other images appear on screen (the "Getting Away With" statements); and (3) "the Series' treatment of [Plaintiff's] arrest in Costa Rica" (the "Costa Rica arrest" statement). *See* ECF No. 35 ("Opp.") at 8–9, 13, 18, 20, 23; FAC ¶¶ 77(a)–(e). None of these statements are actionable as defamation as a matter of law.

The "Control" statements simply do not exist, as Plaintiff concedes (*e.g.,* Opp. at 12); and what was *actually said* in the Series about his connection with WWASP he admits is true. The "Getting Away With" statements are constitutionally protected opinion and hyperbole; Plaintiff does not address the dispositive case law, much less distinguish it. The Costa Rica arrest statement is admittedly true; Plaintiff cannot meet his constitutional burden of proving falsity and has no substantive response to the fair report privilege that also bars his claim.

While Plaintiff admits "certain statements" were "never explicitly made," in an attempt to salvage his fatally flawed claims, he opines that this "misses the point and ignores the realities of modern media consumption." *Id.* at 15. To that end, his Opposition repeats a slew of generalities and adjectives purporting to describe the Series. *See, e.g., id.* at 6, 8, 11, 13, 15, 23 (repeatedly

referring to what he calls use of "suggestive graffiti"; "ominous music and imagery"; "juxtaposition of images, sounds, and statements"; and "emotionally manipulative filmmaking techniques, such as ominous background music . . . to create a sinister atmosphere"). Plaintiff's rhetoric and self-serving interpretation of the Series gets him nowhere.[1]

Plaintiff cannot transform nonactionable and protected speech into a viable claim based on his conclusory assertions that, taken as a whole, the Series reflects badly on him, and the filmmakers should have edited it differently, or added material to make him look better. Such editorial interference is anathema to the First Amendment. The Series presents Ms. Kubler's personal story and strongly held opinions that WWASP and similar programs are abusive and ruined lives. Plaintiff concedes that the "troubled teen industry [is] a topic of legitimate public concern." Opp. at 2. He was undeniably part of that industry and profited from it. Ms. Kubler had the constitutional right to make him part of her film. What Plaintiff pejoratively calls "emotionally manipulative filmmaking techniques" is what the best documentary filmmaking is supposed to do—bring to light injustices in a captivating, compelling way. This was an emotional and dramatic story bravely told from Kubler's perspective. Plaintiff's argument for liability is a straightforward attempt to censor that constitutionally protected point of view.

## ARGUMENT

Dismissal of Plaintiff's Complaint is in order because, as his Opposition confirms, none of the identified statements or "implications" he claims are actionable defamation as a matter of law.[2]

---

[1] As Plaintiff concedes (Opp. at 4) the Court may not accept Plaintiff's interpretation of the Series on this Motion; the First Amendment demands "a context-driven assessment" of the alleged defamatory statement's "susceptibility to a defamatory interpretation without 'indulging inferences in favor of the nonmoving party.'" Mot. at 2, quoting *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1233 (D. Utah 2018).

[2] Courts review claims arising from challenged speech with particular care given the constitutional protections and routinely dismiss. *See, e.g., Brokers' Choice of Am. v. NBC Universal*, 861 F.3d 1081 (10th Cir. 2017) (affirming dismissal on truth and other grounds); *Hogan v. Winder*, 762 F. 3d 1096, 1105–1110 (10th Cir. 2014) (affirming dismissal on opinion and other grounds); *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1185 (10th Cir. 2016) (affirming dismissal where plaintiff failed to

# I. PLAINTIFF'S OPPOSITION CONFIRMS THAT NOTHING IN THE SERIES STATES A VIABLE CAUSE OF ACTION FOR DEFAMATION.

## A. Plaintiff Admits What the Series Said About His Involvement With WWASP Is True, and a Claim Cannot Be Based On Statements the Series Did Not Make.

At the outset, neither of Plaintiff's "Control" statements actually appear in the Series. First, Plaintiff claims the Series states that he "exercised direct control" in youth programs—namely, Ivy Ridge—in which he claims he had no "actual executive control over the staffing and day-to-day operation." Opp. at 12, 18; FAC ¶¶ 13, 32, 77c. But the Series never says that Plaintiff operated Ivy Ridge, or staffed or supervised Ivy Ridge. Plaintiff concedes as much. *See* Opp. at 12, 15. Second, Plaintiff argues that the Series "misrepresents the nature and extent of this involvement," in purportedly portraying him "as a central figure and mastermind of an abusive system when his role was limited to an Association Member." Opp. at 21; *see also* FAC ¶ 77e. The Series says no such thing. *Robert*, not Narvin Lichfield, is presented as the WWASP mastermind; the Series highlights how *Robert* set up the whole web of WWASP entities and profited from them.[3] Plainly put, the "Control" statements do not exist.

To the extent the Series makes *factual* assertions relating to Plaintiff—as opposed to protected expressions of opinion and hyperbole, *see infra* I.B.—their gist is that he was associated

---

allege facts supporting falsity); *Westmont Residential LLC v. Buttars,* 2014 UT App 291, ¶¶ 21–25 (affirming dismissal on opinion and hyperbole grounds); *Martineau v. Currutt,* 2022 WL 180735, at *4–5 (D. Utah Jan. 19, 2022) (Parrish, J.) (dismissing where statements "would necessarily be taken with a grain of salt" and complaint's "contradictory factual assertions" rendered claim "inherently implausible"). "Unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage. He or she may assess it upon a motion to dismiss, firsthand and in context." 2 Robert D. Sack, Sack on Defamation § 16:2.1 (5th ed. 2017).

[3] *See, e.g.,* Ex. 1C, Episode 3 at 17:30–18:00 (repeating Robert Lichfield's name in connection with WWASP's formation a number of times and describing Robert as "Founder and Owner"); *id.* at 25:39 ("Here's our main villain, Robert Litchfield"); *id.* at 33:40–34:30 ("we were always going out to visit Bob's property. It was just insane.  They called this the 'Millionaire's Junkyard.' . . . This is where all that parent money went to die. It all went into this. Just one man's . . . ego project"); *id.* at 35:02–35:19 ("Bob's gonna die someday, and this will all just pass on. And like, what was the point of any of it? . . . Like, he set up WWASP in a way that shielded him from any liability. And it's not fair that he gets away with that"); *id.* at 35:20–35:40 (referring to Robert as "the guy who created it all").

with WWASP and made money from controversial WWASP programs in Costa Rica and South Carolina that faced allegations of abuse, and were shut down. That gist is unassailably true. Plaintiff cannot meet his constitutional burden of proving the material falsity of those statements. Plaintiff bears that burden because, as he concedes, the statements involve matters of public concern. *Phila. Newsp., Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Brokers' Choice of Am. v. NBC Universal*, 861 F.3d 1081, 1107 (10th Cir. 2017). Material falsity means that the gist or sting of the statement is not substantially true. *Masson v. New Yorker Mag.*, 501 U.S. 496, 517 (1991).

Plaintiff admits he has been "involved in operating programs for troubled youth for over thirty-two (32) years" that were "associat[ed] with WWASP" and in which he was involved in "staffing, supervision, or directing" the programs. FAC ¶¶ 8, 14, 27, 44, 55; Opp. at 6 (admits "operating programs for troubled youth" associated with WWASP for "over three decades"). Plaintiff does not dispute that he began his career in the troubled teen business working for WWASP's marketing arm (Ex. 15A, Trapped in Treatment Episode 3 at 15:33–18:54)[4]; he opened his first facility, Carolina Springs Academy, in South Carolina as a "franchisee" of his brother Robert's enterprise (FAC ¶ 44; Ex. 15B, Trapped in Treatment Episode 10 at 5:47–7:59), and later opened Dundee Ranch Academy in Costa Rica (Ex. 2). Plaintiff admits that his Costa Rica facility was closed and he was arrested by the authorities there. FAC ¶¶ 61–63, 77d. No defamation claim can lie for the Series' truthful statements about Plaintiff's admitted involvement with WWASP. Nor can Plaintiff base a claim on statements that do not exist in the Series.

### B.    Plaintiff Has No Answer to The Law Barring Claims Based On Ms. Kubler's Hyperbolic "Getting Away With" Expressions of Opinion.

Defendants' Motion discussed the applicable Utah and First Amendment authority under

---

[4] Plaintiff *does not dispute* that the material appended to Defendants' Request for Judicial Notice (ECF No. 29) is properly before the Court and has waived any objection thereto. *See, e.g., Nexus Pharm., Inc. v. Central Admixture Pharm. Servs.*, 48 F.4th 1040, 1042 n.1 (9th Cir. 2022) ("Because Nexus did not object to the motion for judicial notice before the district court, the objection was waived").

which the "Getting Away With" comments, when considered in context, are textbook examples of rhetorical hyperbole and nonactionable opinion. *See* Mot. at 14–20. Plaintiff's Opposition has no answer. Instead, he pronounces that "the statements at issue here go far beyond mere opinion" (Opp. at 18) without engaging with, much less distinguishing any of Defendants' cited authority.[5] Plaintiff concedes that under the First Amendment, "[c]ontext is crucial," and the court must "consider[] the kind of language used and the context in which it is used." *Id.* at 19–20 (citing *Milkovich v. Lorain Jour.*, 497 U.S. 1, 16–20 (1990)). However, he then asserts that since "[t]he statements in the Series about Lichfield 'getting away' with crimes" appear in a documentary, they "are not framed as mere personal beliefs." Opp. at 19. That is simply wrong.

"Where the tone of a piece is 'pointed, exaggerated and heavily laden with emotional rhetoric and moral outrage,' readers are notified 'to expect speculation and personal judgment.'" *Peterson v. Grisham*, 2008 WL 4363653, at *3 (E.D. Okla. Sept. 17, 2008), *aff'd*, 594 F.3d 723 (10th Cir. 2010) (citation omitted) (dismissal of defamation claim based on non-fiction book). The Series is a personal story told passionately from Ms. Kubler's perspective. Read in that context, a reasonable viewer would not take Ms. Kubler's emotional reaction and figurative language in the "Getting Away With" comments as a "factual conclusion[]" that Plaintiff committed a crime. Opp. at 20. Contrary to what Plaintiff suggests, the constitution's protection for rhetorical hyperbole is not limited to "heated political debates or obvious parody." *Id.* Indeed, the cases Defendants cited in their motion involve other non-fiction publications with a similarly strong point of view.[6]

---

[5] Arguments not raised in an Opposition are waived. *Lopez v. Brennan*, 2018 WL 4688352, at *7 n. 4 (D. Utah Sept. 28, 2018) (plaintiff waived argument by not disputing defendant's assertion in opposition).

[6] *See, e.g., Peterson*, 2008 WL 4363653 (books about wrongful conviction case); *Rinsley v. Brandt*, 700 F.2d 1304 (10th Cir. 1983) (book about treatment of patients in mental institutions); *Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) (book about origins of the 2008 financial crisis); *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) (book and film about murder trial).

Plaintiff alleges as defamatory a segment where "Kubler claims Plaintiff had 'gotten away with this for so long'" and that "it was surreal to see Plaintiff in person '[k]nowing everything [Kubler] knew about [Plaintiff], the children he abused, the parents he conned, all the crimes he's gotten away with.'" FAC ¶ 77a.; Opp. at 18. In this segment, Ms. Kubler is commenting, *in the context of a story told from her point of view and based on facts previously discussed*, that Plaintiff has escaped accountability for the harm she believes the WWASP programs have caused. This is the essence of non-actionable hyperbole and opinion.

Plaintiff declares that "[t]he language, such as accusing Lichfield of 'getting away' with crimes, implies factual wrongdoing, not mere opinion." Opp. at 19. The cases he ignores, and the one he cites (*e.g., Milkovich*) hold just the opposite. Even where they appear to accuse the plaintiff of crimes, hyperbolic statements expressing a speaker's subjective beliefs are not actionable. *Milkovich* strongly reaffirmed the First Amendment's protection for rhetorical hyperbole couched in terms of crime, citing cases such as *Greenbelt Coop. Publ'ng Assn., Inc. v. Bresler*, 398 U. S. 6 (1970), which "[r]eject[ed] a contention that liability could be premised on the notion that the word 'blackmail' implied" that plaintiff "had committed the actual crime of blackmail," and held that "the imposition of liability on such a basis was constitutionally impermissible"; and *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974), holding "traitor" used "in a loose, figurative sense" was "merely rhetorical hyperbole." 497 U.S. at 16–17; *see also* cases cited in Mot. at 16–17. Like those cases, in context, a reasonable viewer would not interpret Ms. Kubler's use of the word "crime" as an accusation of a specific and literal prosecutable offense, but rather as figurative rhetorical hyperbole.

Contrary to Plaintiff's contention otherwise (Opp. at 18–19), the premises for Ms. Kubler's opinion are disclosed, *e.g.,* that the troubled teen programs are *not* illegal, and an ineffectual legal and regulatory system has permitted those who profit from them to escape accountability; and that Plaintiff profited from running two of these programs (as a WWASP "franchisee") and from doing

6

marketing for WWASP, and continues to run programs. Mot. at 16–17. Based on these disclosed premises, Ms. Kubler expressed her constitutionally protected opinion that programs that are part of the WWASP network abuse children and dupe parents, and Plaintiff, through his admitted involvement with WWASP programs, likewise "abused" children and "conned" their parents. Ms. Kubler's "opinions about the legal significance of [Plaintiff's] actions, even opinions that are questionable, are not actionable as defamation." *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1232 (D. Utah 2018); cases cited in Mot. at 17.

Further, these comments are made in a segment where Ms. Kubler describes her emotional reaction ("surreal") to finally seeing Plaintiff in person. In this context, viewers would understand the comments to be a visceral expression of her subjective viewpoint. Particularly where—as here—the storyteller was personally involved in the controversy, viewers fully expect he or she is biased, and "language which generally might be considered as statements of fact may well assume the character of opinion." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401–03 (1999); *Peterson*, 2008 WL 4363653, at *3 ("Even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view"); *Davidson v. Baird,* 2019 UT App 8, ¶ 32.

Plaintiff even goes out of his way to misrepresent the Series to try to suggest wrongdoing. He asserts that the Series "[p]resent[s] Plaintiff" as a murderer "by saying people in the 'higher ups' '[***seem to***] get away with murder' while showing Plaintiff's picture next to a news article about a murder at a youth program." FAC ¶ 77b; Opp. at 8–9, 19. Both in the FAC and his Opposition, Plaintiff inexcusably excises the prefatory words "seem to"—equivocal language that clearly signals that what follows is opinion. *See* Ex. 1C, Episode 3 at 00:00:19–00:00:33 for the actual language used. *See Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 147 (D.D.C. 2017) ("[T]he word 'basically'" is "a red flag that [speaker] is using 'loose' or 'hyperbolic' language"). The "news article" to which Plaintiff refers is fleetingly shown as part of a larger bulletin board that is filled

with clippings, photos, and other material; the clipping does not refer to "murder". The hyperbolic, idiomatic expression "seem to get away with murder" belies any factual accusation of an actual "murder." As the Tenth Circuit explained, "[w]e all know of colloquial or hyperbolic uses" of phrases like "extortion" and it does not "always refer[] to a crime or similarly heinous conduct. Like with other words, context matters." *Hogan*, 762 F. 3d at 1107–08 (affirming dismissal).

Plaintiff has **nothing to say** about the holdings in *Hogan*, or *CACI Premier Technology, Inc. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008), which *specifically* ruled that the idiomatic phrase "that's how you *get away with murder*"—used in reference to a government contractor that provided interrogation services in Iraq—amounted to protected "hyperbole and exaggeration" and could not "support[] a claim for defamation." *Id.* at 300–302. Plaintiff also ignores *Rinsley v. Brandt*, where the author's non-fiction book excoriated the plaintiff's treatment of a patient who died in his care: "overwhelmed by 'anger and rage at the unbelievable arrogance of this man's methods,' [author] asks, 'What does it take to put a stop to such a man? How many more children must die?'" 700 F.2d 1304, 1306–07 (10th Cir. 1983). Plaintiff's silence on this law is telling.

Ms. Kubler's speech in both of the "Getting Away With" statements is no less protected as "exaggerated expressions of criticism. They are the type of statement that our society, interested in free and heated debate about matters of social concern, has chosen to protect." *Id.* at 1308; *see also Milkovich*, 497 U.S. at 20 (reaffirming that the "imaginative expression" and "rhetorical hyperbole" that has "traditionally added much to the discourse of our Nation" is insulated from liability).

### C.    Plaintiff Has No Answer to the Law Requiring Dismissal of Any Claim Based On the Series' True and Privileged Report of Plaintiff's Costa Rica Arrest.

The only other statement about Plaintiff that he identifies as potentially defamatory is the truthful statement that Plaintiff was arrested in Costa Rica. Plaintiff *admits* he was arrested, but asserts that the charges were eventually dropped. *See* FAC ¶ 63; Opp. at 8, 10, 20. The statement is not just substantially but *literally* true. And it is not rendered "false" because it doesn't include

additional information favorable to Plaintiff. Incredibly, Plaintiff ignores the Tenth Circuit's controlling decision in *Brokers' Choice:*

> [T]he omission of additional favorable information from an otherwise true publication does not render a statement materially false. '[T]he First Amendment prohibits a rule that holds a media defendant liable for broadcasting truthful statements and actions because it failed to include additional facts which might have cast plaintiff in a more favorable or balanced light.'

861 F.3d at 1108 (citations omitted); *see* Mot. at 21, citing *Brokers' Choice* and other cases specifically holding that reports of a plaintiff's arrest are not rendered "false" because the plaintiff was subsequently acquitted or charges were dropped or expunged.

The truthful report of Plaintiff's arrest also is subject to the privilege for fair reports of official proceedings. For the reasons discussed in Defendants' motion, California law on fair report, codified at Cal. Civil Code § 47(d) applies here (*see* Mot. at 21–22); Plaintiff's opposition brief does not address this point and waives objection to application of California law.[7]

Plaintiff also does not address the law applying the privilege, instead making the conclusory pronouncement that "[t]he Series' treatment of Lichfield's arrest in Costa Rica goes far beyond fair reporting," creating a "false impression of guilt by omitting the crucial fact that all charges were dropped and Lichfield was exonerated." Opp. at 20. Plaintiff cites no authority for this assertion, and the law (cited in Defendants' motion and ignored) is the opposite: the privilege "does not require the reporter to resolve the merits of the charges, nor does it require that he present the [plaintiff's] version of the facts." *Dorsey v. Nat'l Enquirer,* 973 F.2d 1431, 1436 (9th Cir. 1992).[8] For this additional

---

[7] *See Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211-12 (10th Cir. 2001) ("[P]arties may waive choice of law arguments by failing to adequately brief them"); *see also Lopez*, 2018 WL 4688352, at *7 n. 4.

[8] *See* other cases cited in Mot. at 22-23. Plaintiff cites *Time, Inc. v. Firestone*, 424 U.S. 448 (1976) (Opp. at 20), which held "Florida's limited privilege for accurate reports of judicial proceedings" did not apply to report that a divorce court found wife "guilty of adultery" when it was "indisputable that these were not the facts." *Id.* at 458. There is no such error here, and *Firestone* certainly does not support Plaintiff's legally void argument that Defendants had to include *additional* facts to tell his version of the story.

reason, any claim based on the Costa Rica arrest must be dismissed.

### D. Plaintiff Concedes That He Cannot Base a Defamation Complaint On Generalized Comments About WWASP or the Troubled Teen Industry.

Plaintiff concedes that "to state a claim for defamation," he must show that statements were "*concerning him*" specifically (Opp. at 5 (emphasis added)) and that "[w]hile the Series does include broader commentary on the industry, [his] claims focus on the false and defamatory statements explicitly made about him" (*id.* at 10). Yet, in contravention of the "of and concerning" rule and the First Amendment, Plaintiff improperly seeks to impose defamation liability based on elements of the Series that are clearly *not* "explicitly made about him".[9] That is exactly what he cannot do. Instead, based on independent review of the Series—free of Plaintiff's spin—there is no plausible claim that Plaintiff was personally defamed by the Series' broader critique of WWASP and the specific, documented instances of abuse at Ivy Ridge.

Plaintiff cites *Pratt v. Nelson*, 164 P.3d 366 (Utah 2007) for the proposition that a statement is "of and concerning" a plaintiff if "readers or viewers would understand the statement as referring to the plaintiff." But *Pratt* holds that if "the defamatory matter has no special application" to Plaintiff "and is so general that no individual damages can be presumed," then "no private suit can be maintained." *Id.* at 382. Here, content in the Series that does not refer to Plaintiff, such as the experiences of Ms. Kubler and others at Ivy Ridge, has no "special application" to Plaintiff. Plaintiff cannot ask the court, in the guise of a defamation claim, to silence the viewpoints and experiences of Ms. Kubler and other youths at Ivy Ridge who feel strongly that their lives were ruined by WWASP "youth programs". That is the definition of "vexatio[us] and oppress[ive]"—

---

[9] For example, he contends that viewers would "associate the Series' broader accusations" with him, "not just at the industry in general" because it "paint[s] him as a mastermind of an abusive system." Opp. at 10–11, 21. As noted, the Series neither states nor implied implies any such thing. That is just made up. In truth, the Series explicitly names and focuses on his brother Robert as the founder and mastermind behind WWASP. *See supra* Section I.A.

and is contrary to the First Amendment. *See* Mot. at 9, citing *Blatty v. N.Y. Times Co.*, 42 Cal.3d 1033, 1042, 1044 (1986) (of and concerning rule deters "vexatious lawsuits" that would "seriously interfere with public discussion of issues, or groups, which are in the public eye").

### E.   Plaintiff Cannot Skirt His Complaint's Fatal and Unconstitutional Flaws By Arguing Defamation By "Omission" or "General Impression".

Unable to dispute that his Complaint improperly sought to impose liability based on invented and non-actionable statements, Plaintiff resorts to claiming defamation based on what was *unsaid* in the Series. Plaintiff's reliance on purported "omissions" of "exculpatory" information is improper (and unconstitutional). Contrary to what Plaintiff asserts, the Tenth Circuit has rejected any claim based on "the omission of additional favorable information from an otherwise true publication." *Brokers' Choice*, 861 F.3d at 1108 (affirming dismissal). *See supra*, Section I.C.

Indeed, one of the few cases Plaintiff cites, *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175 (10th Cir. 2007), actually *affirmed dismissal* of a claim that a defendant's "literally true" statement about plaintiff's product was "nonetheless defamatory because it omits a relevant material fact." *Id.* at 1196. In so holding the court followed *NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.*, 879 P.2d 6 (Colo. 1994), which held broadcaster's "providing limited, though accurate, information" in a story about plaintiff's product was not defamatory, and declined to interfere with "the editorial judgments of NBC in determining the scope and specificity of these broadcasts." *Id.* at 15 (citing *Janklow v. Newsweek*, 788 F.2d 1300, 1306 (8th Cir. 1986) ("Courts must be slow to intrude into the area of editorial judgment . . . Accounts of past events are always selective, and under the First Amendment the decision of what to select must almost always be left to writers and editors.")). Here, Plaintiff's quarrel with the Kubler's "***editorial choices***" is a direct assault on the First Amendment and does not salvage his non-existent defamation claim.

Similarly, and equally futile, Plaintiff asserts that notwithstanding the absence of actionable defamatory statements about him, he should be able to base a claim on his own subjective, nebulous

assessment of the Series' "overall message," "implications drawn from juxtaposition of images, sounds, and statements" and use of "emotionally manipulative filmmaking techniques, such as ominous background music. . . ." Opp. at 11, 13. The plaintiff in *Rinsley v. Brandt* made the same argument: the district court should have "read for a general impression rather than focusing on the truth or falsity of each statement or on its status as opinion or factual assertion," and "would have concluded" upon such reading that the book "as a whole unmistakedly provides the average reader with a 'picture' of Dr. Rinsley . . . as an irresponsible throwback to the middle ages." 700 F.2d at 1310. The Tenth Circuit emphatically *rejected* that argument. Affirming dismissal, *Rinsley* held that reading allegedly defamatory statements in context "does not relieve a plaintiff from identifying particular statements or passages that are false" and actionable. *Id.*[10] Plaintiff's claims fail for the same reasons here.[11]

And, again, Plaintiff's second-guessing Kubler's exercise of editorial and aesthetic judgments like choice of background music and images is intolerable under the constitution. *Miami Herald Publ'ng v. Tornillo*, 418 U.S. 241, 255 (1974) ("[W]e reaffirm unequivocally the protection afforded to editorial judgment and to the free expression of views on these and other issues, however controversial.") (citation omitted).

---

[10] Ignoring *Rinsley*, Plaintiff cites without discussion two cases that have no bearing on this case. Opp. at 13 n. 4. *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48 (S.D.N.Y. 2021) granted and denied in part a motion to dismiss claims directed against a dramatization of historical events; it did not involve defamation "by omission" or "as a whole." The unreported decision in *Netflix, Inc. v. Barina*, 2022 WL 3908540 (Tex. App. Aug. 31, 2022) addressed a defamation by overall "gist" theory under Texas law. *Id.* at *2. Plaintiff cites no Utah case adopting that theory and the Tenth Circuit rejected it in *Rinsley*.

[11] Plaintiff's "defamation per se" and "defamation" claims (Counts I and II) did not plead defamation "by implication," but relabeling them in his brief gets him nowhere. "A 'Plaintiff may not construct an actionable statement by reading whatever implication it wishes' into [a] defendant's work." *Eliott v. Lions Gate Ent'mnt Corp.*, 639 F. Supp. 3d 1012, 1026 (S.D. Cal. 2022) (citation omitted). As discussed *supra* Section I.A, any purported implication that Plaintiff was the "mastermind" of WWASP, or was "in charge" and "responsible for" the abuses shown at Ivy Ridge is not reasonably drawn from the specific statements he cites in the Series. *Hogan*, 762 F.3d at 1105-10 (affirming dismissal); *Keisel*, 2023 UT App 163, ¶ 50 ("no basis for concluding that" claimed implication could be drawn as matter of law).

## II.     PLAINTIFF DOES NOT PLAUSIBLY PLEAD ACTUAL MALICE.

Though the Court need not reach this issue, in light of the foregoing grounds, dismissal is also in order because Plaintiff is a limited purpose public figure and has not plausibly pled the "actual malice" that the First Amendment requires him to prove. *See* Mot. at 23–25.

Plaintiff argues that Defendants' "characterization of [him] as a public figure is erroneous" because he "has not thrust himself into the vortex of this public controversy, nor does he have regular and continuing access to the media." Opp. at 3. But this unsupported argument ignores the *undisputed evidence* that he *has* inserted himself into an admittedly important public controversy "in order to influence the resolution of the issues involved." *See* Mot., Factual Background, § D and Arg. at 23–24. On that, he is completely silent. *See also* Opp., *passim*; Req. for Judicial Notice at 3–6 (as to which Plaintiff offered no objections).

Plaintiff disclaims responsibility to plead actual malice (FAC ¶ 102), has not done so, and as a matter of law could not do so. Actual malice requires, at the threshold, "proof that the statement was false" (*Brokers' Choice*, 861 F.3d at 1106), and as discussed, there is no false statement of fact about Plaintiff. Even if there were, his bare-bones allegations simply assert the kind of "buzz words" parroting the legal standard that courts find inadequate on a motion to dismiss. Mot. at 24–25.[12]

---

[12] Aside from Plaintiff's recycled arguments as to the statements discussed in Section I above and his apparent estrangement with his own son (Opp. at 21), the only purported "evidence" of actual malice Plaintiff cites is Ms. Kubler's use of a clip from the 1934 film version of "The Count of Monte Cristo" because that novel involved a revenge story. Even if Ms. Kubler's artistic use of that clip was somehow specific to Plaintiff (which it is not), the fact that she understandably has strong views about the troubled teen industry she wants to bring to light as a means of healing for herself and others—or even dislike for Plaintiff based on what she learned about him in her research—is definitively not actual malice. *See, e.g., Coleman v. Grand*, 523 F. Supp. 3d 244, 261 (E.D.N.Y. 2021) (that defendant "was motivated by revenge" does not "show actual malice" because "[t]he actual malice standard focuses not 'on the defendant's attitude toward the plaintiff,' but rather 'on the defendant's attitude toward the truth'"); *Greenbelt Coop. Publ'ng*, 398 U.S. at 10–11 (basing actual malice on "the 'language' of the publication itself," and "on the basis of a combination of falsehood and general hostility," is "error of constitutional magnitude").

### III.    THE DUPLICATIVE TORT CLAIMS MUST BE DISMISSED TOO.

Plaintiff's remaining tort claims for false light, intentional infliction of emotional distress, and civil conspiracy are duplicative of his defamation claim, and fail along with it. "A plaintiff may not attempt an end-run around First Amendment strictures protecting speech by instead suing for defamation-type damages under non-reputational tort claims." *Keisel*, 2023 UT App 163, ¶ 70; Mot. at 25–27. Once again, Plaintiff has no answer to the cases cited in Defendants' motion, and simply proclaims that his tag-along claims "are not merely repackaging his defamation claims," adding his usual strident rhetoric about "Defendants' egregious conduct" and "character assassination campaign". Opp. at 3.  But Plaintiff does not dispute the simple fact that all his claims are "based on the same statements at issue in the defamation claims," and as such they cannot stand if the defamation claim falls. *Keisel*, 2023 UT App 163, ¶¶ 69–70.

Equally untenable is Plaintiff's attempt to bolster his claim by arguing that "the Series included footage of Lichfield secretly filmed at a private karaoke event, an evident invasion of privacy, which, when combined with the overlayed commentary, is designed to portray him in a false light." Opp. at 6–7; FAC ¶ 34. The "karaoke event" was open to the public, which Plaintiff does not deny, nor does he deny it is true footage of him. A defamation or false light claim cannot be premised on the use of true footage. "Holding up a mirror isn't defamation," or false light. That the video footage "might have been unflattering doesn't mean that it was false. It's a false light claim, not an unflattering light claim." *Love v. Simmons*, 2024 WL 809107, at *5, *7 (N.D. Ill. Feb. 27, 2024) (dismissing defamation and false light claims). *See also Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022) (reports "primarily using [plaintiff's] own words and videos, . . . cannot be the basis of a claim for defamation.").

14

## IV.     DEFENDANTS ARE ENTITLED TO RELIEF UNDER THE ANTI-SLAPP ACTS.

The Anti-SLAPP statutes of either Utah or California apply to Plaintiff's meritless First Amendment-chilling litigation. Mot. at 27, citing Cal. C.C.P. § 425.16(c)(1); Utah Code Ann. § 78B-25-110 ("UPEPA"); *Diamond Ranch Academy, Inc. v. Filer*, 2016 WL 633351, at *4 (D. Utah Feb. 17, 2016). Plaintiff concedes the Utah UPEPA applies here, and he also acknowledges that under either statute, "[t]he critical question is whether Lichfield's claims arise from Defendants' exercise of the right of freedom of speech on a matter of public concern." Opp. at 16. There is no question his claims do just that. *Provo Canyon* recently held an expose of a "troubled teen" facility was "speech" of public concern subject to UPEPA. *UHS of Provo Canyon, Inc. v. Bliss*, 2024 WL 4279243 (D. Utah Sept. 24, 2024) (applying UPEPA though denying relief given unique contract and tort claims related to confidentiality of patient and HIPPA information).

That being so, "the Court must analyze each of Lichfield's five causes of action to determine whether Lichfield has stated a claim upon which relief may be granted." Opp. at 17. "[I]f Plaintiffs cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then Plaintiffs as a matter of law cannot meet the probability of success on the merits standard." *Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017); Utah Code Ann. § 78B-25-107(1). For the reasons set forth above, Plaintiff has not stated a plausible claim for relief under Rule 12(b)(6), and thus fails his Anti-SLAPP law burden as a matter of law. *Id.* Defendants are therefore also entitled to relief under the Anti-SLAPP Acts.

## <u>CONCLUSION</u>

Defendants respectfully request that Plaintiff's First Amended Complaint be dismissed with prejudice, and that this Court strike Plaintiff's Complaint pursuant to Cal. C.C.P. § 425.16, or alternatively, Utah Code Ann. § 78B-25-101, *et seq.*, and award Defendants their attorneys' fees in an amount to be determined.

Dated: November 12, 2024

Respectfully submitted,

David W. Tufts (8736)
Ian M. Kinghorn (17717)
DENTONS DURHAM JONES PINEGAR P.C.
111 South Main, Suite 2400
Salt Lake City, Utah 84111
(801) 415-3000
*david.tufts@dentons.com*
*ian.kinghorn@dentons.com*

*/s/ Natalie J. Spears*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

*Attorneys for Defendants Katherine Kubler and Netflix, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 12, 2024, a true and correct copy of the foregoing

was served by CM/ECF on all counsel or parties of record on the service list.


*/s/ Natalie J. Spears*